UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEFF RAY MITCHELL,<br><br>   Plaintiff,<br><br> v.<br><br>LEED HR, LLC and MICHAEL SCHROERING,<br><br>   Defendants. | Case No. 2:14-cv-00026-EJL-REB<br><br>**MEORANDUM DECISION AND ORDER** |

  Plaintiff Jeff Mitchell moves on summary judgment for an order enforcing (1) an "Engagement Incentive" clause in his contract with Defendant Leed HR, LLC ("Leed") and (2) Defendant Michael Schroering's personal guaranty of the incentive. (Dkt. 30.) Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

  Because Defendants have not shown that the purpose of the engagement incentive or the personal guaranty was substantially frustrated by Mitchell's troubled business relationship with General Employment Enterprises, Inc. ("GEE"), the Court grants

Mitchell's motion for partial summary judgment. The Court denies each parties' motions to strike portions of the other's supporting affidavits. (Dkts. 34, 43.)

## FACTUAL BACKGROUND

Schroering was the sole member of Leed, and Leed was the largest shareholder of GEE stock. Apart from its role as a shareholder of GEE, Leed had no business operations. Schroering was also the CEO and chairman of GEE's board of directors.

Schroering contacted Mitchell for the purpose of hiring Mitchell as a business consultant. Schroering entered into a consulting agreement between Leed and Mitchell. In the section of the contract governing Mitchell's compensation, Leed promised the following "Engagement Incentive": "On September 1, 2013, Schroering shall grant to Consultant [Mitchell] 400,000 GEE shares as an incentive for Consultant [Mitchell] to sign Consulting Agreement. The Engagement Incentive shall vest pro-rata over 90 days or immediately upon termination of this Agreement." (Dkt. 33-1, p.2.)

The same day Schroering signed the consulting agreement, he executed a personal guaranty in favor of Mitchell. Schroering agreed, "with or without demand, to pay Consultant [Mitchell], to the extent that such payment is not made by the [Leed], any and all amounts owed or incurred under the Contract." (*Id.* p.6.)

Although the consulting agreement stated Leed sought Mitchell's consulting services, Schroering maintains that the purpose of the agreement was to obtain Mitchell's services for the benefit of GEE. It was his intent that Mitchell would join GEE as a full-

time employee, at which point the consulting agreement would terminate. That never happened.

According to Schroering, Mitchell had difficulty working with the other members of GEE's board from the outset. As a result, the board rebuffed Schroering's efforts to bring Mitchell on as a GEE employee or to utilize his services as a consultant. With no working relationship between GEE and Mitchell, and with Leed not having any need for Mitchell's services itself, Leed opted to not transfer the 400,000 shares of GEE stock in accordance with the Engagement Incentive.

Mitchell filed this lawsuit alleging breach of contract by Leed, breach of the duty of good faith and fair dealing by Leed, breach of contract on the personal guaranty of Schroering and breach of the duty of good faith and fair dealing related to the personal guaranty of Schroering. (Dkt. 2-3.) For purposes of the motion for partial summary judgment, the Court will only address the breach of contract claims related to the Engagement Incentive clause of the consulting agreement.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Crim. P. 56(a). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On summary judgment, all disputed facts and reasonable inferences

must be construed in favor of the nonmoving party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  However, to defeat a properly supported motion for summary judgment, the nonmoving party must present more than a mere scintilla of evidence, and must come forward with evidence sufficient to show that a reasonable jury could return a verdict in its favor.  *Id*. at 248.

Further, Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the either party cannot make a showing on elements essential to his claims or affirmative defenses, there can be no genuine issue of material fact "since a complete failure of proof concerning an essential element on the . . . party's case necessarily renders all other facts immaterial."  *Id*. at 323.

## DISCUSSION

It is undisputed that neither Leed nor Schroering transferred to Mitchell the 400,000 shares of GEE stock on or before November 30, 2013, the last day of the vesting period set by the engagement incentive.  Mitchell therefore concludes that Leed breached the consulting agreement and that Schroering is liable for the shares pursuant to his personal guaranty.  Defendants counter that partial summary judgment is inappropriate because (1) the parties dispute whether the purpose of the consulting agreement was substantially frustrated when Mitchell and GEE failed to form a professional relationship,

and (2) Mitchell failed to prove that he was damaged by Defendants' breaches.  Before turning to the merits of the parties' arguments, the Court will address Mitchell's contention that Schroering's affidavit supporting his frustration defense is barred by Idaho's parol evidence rule.

I.

Absent from the consulting agreement is an express statement that Leed engaged Mitchell only for the benefit of GEE.  To the contrary, the agreement states that Leed "desire[d] assistance in managing its general business affairs."  (Dkt. 33-1 p.1 ¶A.)  According to Mitchell, "parol evidence may [only] be considered to aid a trial court in determining the intent of the drafter of a document if an ambiguity exists."  *Steel Farms, Inc. v. Croft & Reed, Inc.*, 297 P.3d 222, 229 (Idaho 2012).  Since the consulting agreement unambiguously states why Leed and he entered into it, Mitchell has moved to strike from Schroering's affidavit any mention of GEE as the true beneficiary of the consulting agreement or Mitchell's fractured relationship with the GEE board.

Mitchell's understanding of the parol evidence rule is incomplete.  "The parol evidence rule . . . does not apply to averments of fraud, misrepresentation, mutual mistake or other matters which render a contract void or voidable."  *Tusch Enter. v. Coffin*, 740 P.2d 1022, 1030 n.5 (Idaho 1987); *see also World Wide Lease, Inc. v. Woodworth*, 728 P.2d 769, 778 (Id. Ct. App. 1986) ("Although the lease purported to be 'the entire integrated agreement' between the parties, evidence of contemporaneous negotiation is admissible . . . to grant relief from performance.").  Idaho courts have most

commonly recognized this exception to the parol evidence rule when confronted with claims of fraud or mistake. *E.g., Belk v. Martin*, 39 P.3d 592, 597 (Idaho 2001) ("Parol evidence is also admissible to prove that by reason of mutual mistake the written agreement does not express the parties' true intent."); *Lindberg v. Roseth*, 46 P.3d 518, 524 (Idaho 2001) ("The parol evidence rule, however, does not preclude admission of evidence that one party to a contract made representations that fraudulently induced the other party to enter into the contract."). However, the Idaho Court of Appeals has also held that the parol evidence rule will not bar evidence that performance of the contract was impossible. *Landis v. Hodgson*, 706 P.2d 1363, 1369 (Id. Ct. App. 1985).

Just as with fraud, mistake, and impossibility, the frustration-of-purpose doctrine finds home in the principle that parol evidence "of the circumstances in which the contract was made" is admissible to establish relief from performance. *Restatement (Second) of Contracts* § 214, cmt. d (1981) (adopted in *Tusch*). "The frustration principle operates in a proper situation to excuse a promisor's duty of performance if some supervening event has destroyed the value of the counter-performance bargained for by the promisor, even though the counter-performance is still literally possible." *Twin Harbors Lumber Co. v. Carrico*, 442 P.2d 753, 758 (Idaho 1968) (per curiam). For the defense to succeed, the supervening event must have been unforeseen, and its nonoccurrence, "a basic assumption on which the contract was made." *Restatement (Second) Contracts* § 265. Schroering's affidavit goes to the issue of foreseeability, and to the basic assumptions of Mitchell and Leed. It is not offered "to alter the meaning of

the written contract but to establish a defense provided by law—[frustration of purpose]—to which the parties' mutual assumption of facts is relevant." *Landis*, 706 P.2d at 1369.

II.

Defendants argue that the GEE's board's decision not to employ Mitchell substantially frustrated the purpose of the consulting agreement because Leed had no independent need for Mitchell's services. Mitchell takes a narrower view of things. He argues that 400,000 shares of GEE stock were promised as an incentive for him to sign the agreement. Thus, according to Mitchell, the Engagement Incentive's purpose was fulfilled when he signed the consulting agreement. Mitchell is correct.

The frustration principle will not excuse a party from preforming when "the language [of the contract] or the circumstances indicate the contrary." *Restatement (Second) of Contracts* § 265. Neither the language nor the circumstances suggest that Leed or Schroering should be excused from fulfilling the Engagement Incentive. The Engagement Incentive was, axiomatically, "an incentive for [Mitchell] to sign [the] Consulting Agreement." (Dkt. 33-1, p.2.) This objective was achieved when Mitchell made his services available to GEE. While Defendants may have envisioned a long-term relationship between GEE and Mitchell, there is nothing to suggest that the Engagement

Incentive was conditioned that relationship developing.[1] Rather, the Engagement Incentive functioned as a "signing bonus" and by its own terms was not contingent upon the rest of the terms of the contract being completed. The frustration principle will not excuse a party's performance simply because "the transaction has become less profitable for [Defendants] or even that [they] will sustain a loss." *Restatement (Second) of Contracts* § 265, cmt. a.

### III.

To prove his claim from breach of contract, Mitchell must establish "(a) the existence of the contract, (b) the breach of the contract, (c) the breach caused damages, and (d) the amount of those damages." *Mosell Equities, LLC v. Berryhill & Co., Inc.*, 297 P.3d 232, 241 (Idaho 2013). Damages refers to economic injury, and "the measure of damage—as well as the fact of damage—must be proven beyond speculation." *Melaleuca, Inc. v. Foeller*, 318 P.3d 910, 914 (Idaho 2014) (citations omitted). Defendants argue that Mitchell has not proved the value of the 400,000 GEE shares and, therefore, the existence and amount of damages.

---

[1] To the extent that the Defendants' statement that the transfer of the stock was "conditioned upon Mitchell performing work and coming on as a valued employee of GEE," Dkt. 37 ¶16, is meant to imply an unincorporated clause into the consulting agreement, that argument is foreclosed by the parol evidence rule. *See AED, Inc. v. KDC Inv., LLC*, 307 P.3d 176, 182 n.2 (Idaho 2013) (extrinsic evidence was inadmissible to show that the consideration supporting the contract was other than what the contract stated); *Tusch*, 740 P.2d at 1029 (extrinsic evidence of warranties of quality were barred by the parol evidence rule).

In his amended affidavit, Mitchell stated that GEE stock was trading at $0.24 per share on December 2, 2013, the first day of trading after the close of the vesting period, (Dkt. 41), and he submitted a Yahoo! Finance report to that effect, (Dkt. 33-4). Based on this evidence, Mitchell claims that his loss was $96,000.00. Defendants claim that Mitchell's amended affidavit cannot be considered because it was untimely, and that the Yahoo! Finance report cannot be considered because is unauthenticated. Defendants' arguments are misplaced. As Mitchell points out, the price of a publicly traded stock is subject to judicial notice. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (affirming judicial notice of "Corinthian's reported stock price history and other publicly available financial documents"). Further, Defendants have not introduced any evidence calling into doubt the accuracy of $0.24 share price.

Defendants' two remaining arguments are also unpersuasive. First, Defendants argue that summary judgment is inappropriate because Mitchell's right to the shares vested over a 90-day period. This does not alter the fact that at the end of the 90-day period, all the shares of GEE stock would have been worth $0.24. Moreover, Defendants have not offered any evidence that Mitchell would have sold the shares prior to November 30, 2013. Second, Defendants note that Schroering was removed as chairman before the end of the vesting period. This fact has nothing to do with Leed's or Schroering's ability to transfer the shares of GEE stock to Mitchell and was not included as a prerequisite for the Engagement Incentive compensation.

IV.

Finally, Defendants argue that Mitchell did not support his claim to prejudgment interest. "Idaho Code § 28-22-104 allows for prejudgment interest at a rate of twelve percent per year in cases of money due on an express contract." *Dillon v. Montgomery*, 67 P.3d 93, 96 (Idaho 2003). A court has discretion under the statute to award prejudgment interest "as a matter of law . . . where the amount claimed, even though not liquidated, is capable of mathematical computation." *Id.* As just discussed, Mitchell's damages are $96,000.00. The Court agrees that an award of prejudgment interest is appropriate to fully compensate Mitchell for his harm, *see Kidd Island Bay Water Users Co-op. Ass'n, Inc. v. Miller*, 38 P.3d 609, 613 (Idaho 2001). The Court will set the amount at a later date when a final judgment is entered in this matter.

## ORDER

IT IS SO ORDERED:

1. Plaintiff's Motion for Partial Summary Judgment (Dkt. 30) is **GRANTED**.

2. Defendants' Motion to Strike (Dkt. 34) is **DENIED**.

3. Plaintiff's Motion to Strike (Dkt. 43) is **DENIED**.

DATED: April 10, 2015

_____
Edward J. Lodge
United States District Judge